

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

FILED

MAR 1 8 2016

THOMAS G. BRUTON
CLERK, U.S. DISTRICT COURT

|  |  |
|---|---|
| UNITED STATES OF AMERICA *ex rel.*, TIMOTHY B. MORGAN, <br><br> Plaintiffs, <br><br> v. <br><br> BANK OF AMERICA CORP., BANK OF AMERICA, N.A., BAC HOME LOANS SERVICING, L.P., f/k/a COUNTRYWIDE HOME LOANS SERVICING, L.P., WELLS FARGO & CO., WELLS FARGO BANK, N.A., J.P. MORGAN CHASE & CO., JPMORGAN CHASE BANK, N.A., CITIGROUP INC., CITIBANK, N.A., AND CITIMORTGAGE, INC. <br><br> Defendants. | **FILED UNDER SEAL PURSUANT TO 31 U.S.C. § 3730(b)(2) and Local Rule 26.2** <br><br> Case No. <br><br> **JURY TRIAL DEMANDED** <br><br> **1:16-cv-03425** <br> **Judge Castillo** <br> **Magistrate Finnegan** |

---

## FALSE CLAIMS ACT COMPLAINT

---

### FILED UNDER SEAL

#### PURSUANT TO 31 U.S.C. §§ 3729 *et seq.*

#### and Local Rule 26.2

Bruce C. Howard
*bhoward@siprut.com*
Richard S. Wilson
*rwilson@siprut.com*
SIPRUT PC
17 N. State Street
Suite 1600
Chicago, Illinois 60602
312.236.0000
Fax: 312.878.1342

**COMPLAINT**

Plaintiff Timothy B. Morgan ("Morgan" or "Relator"), by his undersigned attorneys, files this action on behalf of the United States of America, against Defendants Bank of America Corporation, Bank of America, N.A., BAC Home Loans Servicing, L.P., f/k/a Countrywide Home Loans Servicing, L.P., Wells Fargo & Company, Wells Fargo Bank, N.A., J.P Morgan Chase & Company, JPMorgan Chase Bank, N.A., Citigroup Inc., Citibank, N.A., and CitiMortgage, Inc., and states as follows:

## I. STATEMENT OF THE CASE

1.    This case concerns mortgage fraud. Defendants have already admitted to the most massive frauds in the history of the United States in connection with their mortgage activities beginning no later than the mid-2000s, and have agreed to pay record settlements to the federal and state governments. The claims that have been brought, the admissions that have been made by Defendants, and the releases that have been entered into do not cover the mortgage fraud alleged herein.

2.    As set forth in greater detail below, Defendants submitted false statements and false claims to the federal government in connection with mortgage foreclosure costs. It is estimated that, during the relevant time period, defendants submitted false claims in excess of two-hundred million dollars.

3.    This is an action for damages and civil penalties on behalf of the United States of America, through Plaintiff/Relator Timothy B. Morgan, arising

from the Defendant's violations of the Federal False Claims Act, 31 U.S.C. § 3729, *et seq.*

4.     Two primary means by which financial institutions, including Defendants, generate revenue in the mortgage industry are through the origination and the servicing of mortgages.

5.     Mortgage origination is the process by which a borrower applies for a new loan, and a lender processes that application, from the taking of the application, the underwriting or determination of the loan's risk, through the dispersal of funds.

6.     At all relevant times, defendants were the largest mortgage originators in the United States.

7.     Mortgage servicing is the process by which a mortgage is administered after the disbursal of the funds, including, but not limited to collecting payments from mortgagors, paying property taxes and insurance on the properties, and pursuing either loss mitigation or foreclosure when mortgagors become delinquent on mortgage payments. Because most mortgages in the U.S. are sold after origination, mortgage servicers are generally not the mortgage originators.

8.     At all relevant times, Defendants were the largest mortgage servicers in the United States.

9.     As a result of the origination of toxic mortgages in the mid- to late 2000s, hundreds of thousands of families defaulted on their mortgages, losing billions of dollars. Because the toxic mortgages were pooled into Mortgage-

Backed Securities, tens-of-thousands of investors also lost billions of dollars. Departments and agencies of the United States Government that guaranteed or insured these mortgages, also paid out billions of dollars when homeowners defaulted on their loans.

10.  Defendants' fraudulent conduct continued in connection with the servicing of these mortgages. When homeowners defaulted on the toxic mortgages, the Defendants failed to attempt to mitigate the homeowners' losses, failed to attempt to restructure the loans, falsified documents, and imposed unlawful fees, amongst other illegitimate practices. Defendants' fraudulent activities in servicing mortgages inflicted billions of dollars of additional damages on homeowners, investors, and the government entities that insured or guaranteed the mortgages.

11.  The aforementioned conduct has already been investigated by the federal and state governments, and has led to settlements with Defendants worth in excess of $62 billion. These settlements include, but are not limited to the following:

A.  On November 19, 2013, the Department of Justice announced a $13 billion settlement with JP Morgan to resolve state and federal claims regarding the packaging, marketing, sale and issuance of residential mortgage-backed securities ("RMBS"). At the time, this was the largest settlement with a single entity in American history. According to the DOJ release, "JPMorgan acknowledges that it regularly represented to RMBS investors that the mortgage loans in various securities complied with

underwriting guidelines. Contrary to those representations . . . on a number of different occasions, JPMorgan employees knew that the loans in question did not comply with those guidelines and were not otherwise appropriate for securitization, but they allowed the loans to be securitized – and those securities to be sold – without disclosing this information to investors." According to then-Attorney General Eric Holder, "Without a doubt, the conduct uncovered in this investigation helped sow the seeds of the mortgage meltdown...."

B.  On August 21, 2014, The Department of Justice announced that Bank of America had agreed to pay $16.65 billion to settle claims relating to the packaging, marketing, sale, structuring and issuance of Residential Mortgage-Backed Securities, collateralized debt obligations, and the bank's practices concerning the origination of mortgage loans. This became the largest civil settlement with a single entity in American history, overtaking the prior settlement with JP Morgan.

C.  On July 14, 2014, the Department of Justice announced that a $7 billion settlement had been reached with Citigroup Inc. to resolve state and federal claims relating to the packaging, securitization, marketing, sale and issuance of Residential Mortgage-Backed Securities. The settlement includes a $4 billion civil penalty, the largest penalty ever under the Financial Institutions Reform, Recovery and Enforcement Act. In an agreed upon statement of facts, Citigroup acknowledged that it made

serious misrepresentations to the public – including the investing public – about the mortgage loans it securitized in RMBS.

D.    On February 3, 2016, Wells Fargo announced that it had agreed to pay $1.2 billion to settle claims that it engaged in mortgage fraud relating to the origination and underwriting of government-insured mortgages. The settlement resolves claims that Wells Fargo misled the Federal Housing Administration ("FHA") about the health of more than half of the FHA-insured loans issued by the bank between 2001 and 2010. The agreement has yet to be finalized. Moreover, according to Wells Fargo's 2015 Annual Report, notwithstanding this $1.2 billion settlement, "Federal and state government agencies, including the United States Department of Justice, continue investigations or examinations of certain mortgage related practices of Wells Fargo and predecessor institution." These investigations relate to "the origination, underwriting and securitization of residential mortgages...."

E.    On March 12, 2012, the Department of Justice announced that a $25 billion settlement had been reached with the country's five largest mortgage servicers, including Bank of America Corporation, J.P. Morgan Chase & Co., Wells Fargo & Company, Citigroup, Inc., to resolve state and federal claims relating to mortgage servicing and foreclosure abuses. The agreement represented the largest federal-state civil settlement ever obtained.

12.     What has yet to see the light of day is that fact that, in addition to the aforementioned frauds, the Defendants fraudulently submitted false claims and false statements to the U.S. Department of Veterans Affairs, the U.S. Department of Housing and Urban Development through the Federal Housing Administration, the Federal National Mortgage Association, and the Federal Home Loan Mortgage Corporation, in connection with costs for mortgage liquidation through foreclosure or deed in lieu of foreclosure which they had not paid and were not entitled to seek from the government.

## II.     <u>JURISDICTION AND VENUE</u>

13.     This Court has jurisdiction over the subject matter of the False Claims Act claims pursuant to 31 U.S.C. § 3723(a), which specifically confers jurisdiction on this Court for actions brought pursuant to 31 U.S.C. §§ 3729 and 3730; pursuant to 28 U.S.C. § 1331, which confers federal subject matter jurisdiction for federal questions; and pursuant to 28 U.S.C. § 1345, which confers federal subject matter jurisdiction over actions where the United States is plaintiff.

14.     Contemporaneous with the filing of this Complaint, Morgan provided the Attorney General of the United States a statement of material evidence and information regarding the allegations herein of which Morgan is aware, together with a copy of the Complaint, in accordance with the provisions of 31 U.S.C. § 3730(b)(2).

15.     This Court has personal jurisdiction over each Defendant pursuant to 31 U.S.C. § 3732(a), because each Defendant submitted or caused to be

submitted false claims directly or indirectly to the Government and because each has made, used, submitted or caused to be made, used or submitted, false or fraudulent records and conspired in this District to get false claims paid or approved.

16. Venue is proper in this District pursuant to 31 U.S.C. § 3732(a) and 28 U.S.C. § 1391(b) and (c). All Defendants either currently transact business within this District, and/or did so during the time period relevant to this action, and acts proscribed by 31 U.S.C. § 3729 occurred in this District.

17. This suit is not based upon the public disclosure of allegations or transactions in a criminal, civil or administrative hearing, in a congressional, administrative, or Government Accounting Office report, hearing, audit, or investigation, or from the news media. To the extent that some allegations or transactions alleged herein have been publicly disclosed, Morgan is an "original source" of same within the meaning of the False Claims Act, and voluntarily disclosed such information to the government before filing this action. Morgan gained direct and independent knowledge of the fraud alleged herein.

### III.    **THE PARTIES**

**A.    The Plaintiff-Relator.**

18. This action is brought by Relator Timothy B. Morgan on his own behalf and on behalf of the United States of America. Morgan brings this action based on his direct, independent, and personal knowledge, and also on information and belief. He brings this action against Defendants for violations of

the federal False Claims Act, 31 U.S.C. § 3729 *et seq.*, for the United States and for himself, pursuant to the authority granted by 31 U.S.C. § 3730(b).

19.     Morgan is a citizen of Illinois and during the relevant time period, was, and still is employed as a Senior Staff Counsel for the Regional Counsel of the Department of Veterans Affairs.

20.     As Staff Counsel for the Regional Counsel of the Department of Veterans Affairs, Morgan primarily engages in labor litigation. Morgan's responsibilities are not in any way related to mortgage foreclosures.

21.     None of the information provided by Morgan in this suit was obtained in the course of his employment with the Department of Veterans Affairs.

**B.     Defendants.**

22.     Defendant Bank of America Corporation is a diversified global financial services company and a bank holding company. It is a Delaware corporation headquartered in Charlotte, North Carolina. Defendant Bank of America, N.A. is a national banking association organized and existing under the laws of the United States, with its main office and principal place of business (as set forth in its Articles of Association) in Charlotte, North Carolina, and is a subsidiary of Bank of America Corporation. Defendant BAC Home Loans Servicing, L.P. was a servicing company that had formerly been known as Countrywide Home Loans Servicing, L.P. It was a Texas limited partnership with its principal place of business in Plano, Texas. It was, for a time, a wholly owned subsidiary of Bank of America, until July 2011, when it was merged into Bank

of America, N.A. The defendants identified in this paragraph are collectively referred to herein as "BOA." The business of BOA and its subsidiaries and affiliates includes the origination and servicing of mortgage loans.

23. Defendant Wells Fargo & Company is a diversified financial services company. It is a Delaware corporation, headquartered in San Francisco, California. Defendant Wells Fargo Bank, N.A. is a national banking association organized and existing under the laws of the United States, with its main office and principal place of business (as set forth in its Articles of Association) in Sioux Falls, South Dakota, and is a subsidiary of Wells Fargo & Company. The two defendants identified in this paragraph are referred to herein as "Wells Fargo." The business of Wells Fargo and its subsidiaries and affiliates includes the origination and servicing of mortgage loans.

24. Defendant J. P. Morgan Chase & Company is a diversified global financial services firm. It is a Delaware corporation, headquartered in New York, New York. Defendant JPMorgan Chase Bank, N.A. is a national banking association organized and existing under the laws of the United States, with its main office and principal place of business (as set forth in its Articles of Association) in Columbus, Ohio, and is a subsidiary of J.P. Morgan Chase & Company. The two defendants identified in this paragraph are referred to herein as "J.P. Morgan." The business of J.P. Morgan and its subsidiaries and affiliates includes the origination and servicing of mortgage loans.

25. Defendant Citigroup Inc. is a diversified global financial services company. It is a Delaware corporation headquartered in New York, New York.

Defendant Citibank, N.A. is a national banking association organized and existing under the laws of the United States, with its main office and principal place of business (as set forth in its Articles of Association) in Sioux Falls, South Dakota, and is a wholly owned indirect subsidiary of Citigroup Inc. Defendant CitiMortgage is a New York corporation, is a wholly owned indirect subsidiary of Citigroup Inc., and is a residential mortgage loan servicing company headquartered in O'Fallon, Missouri. The three defendants identified in this paragraph are referred to herein as "Citigroup." The business of Citigroup and its subsidiaries and affiliates includes the origination and servicing of mortgage loans.

26.     BOA, Wells Fargo, J.P. Morgan, and Citigroup collectively shall be referred to herein as the "Defendant Banks."

27.     Combined, the Bank of America, N.A., Wells Fargo Bank, N.A., JPMorgan Chase Bank, N.A., and Citibank, N.A., had total assets of approximately $5.407 billion as of late 2014, Real Estate Owned of over $9.754 billion, and controlled 60% to 75% of the single family home mortgage market in the U.S.

### C.     Government Entities

#### 1.     The Department of Veterans Affairs

28.     The U.S. Department of Veterans Affairs ("Veterans Affairs") is the second largest Federal department, whose mission is to serve America's veterans and their families and ensure that they receive medical care, benefits, social support, and lasting memorials promoting the health, welfare and dignity of all

veterans in recognition of their service to this Nation. 38 U.S.C. §§ 7301(b)(3), 3710(a), and 3712.

29.   One of the benefits Veterans Affairs provides servicemembers, veterans, and eligible surviving spouses is a home loan insurance guarantee, to help beneficiaries buy, build, repair, retain, or adapt a home for their own personal occupancy. 38 U.S.C. §§ 3702(d), 3712(c)(2)-(3); 38 C.F.R. §§ 36.4202, 36.4335.

30.   During the relevant time period, the Defendant Banks originated, underwrote, and/or serviced mortgages guaranteed by Veterans Affairs.

### 2.   The Federal Housing Administration

31.   The Federal Housing Administration ("FHA") provides mortgage insurance on loans made by FHA-approved lenders throughout the United States, insuring mortgages on single family and multifamily homes. It is the largest insurer of mortgages in the world. The FHA became a part of the Department of Housing and Urban Development's ("HUD") Office of Housing in 1965. HUD's and FHA's mission is, in part, to create strong, sustainable, inclusive communities and quality affordable homes for all, to strengthen the housing market, bolster the economy and protect consumers. *See, e.g.,* 12 U.S.C. § 1709; *see generally* 24 C.F.R. Part 203.

32.   The FHA insurance program, by reducing the risk borne by approved lenders, is designed to stimulate lending to creditworthy borrowers, thereby increasing homeownership and aiding local communities in the form of

community development, increased tax bases, and related benefits. *See generally* 12 U.S.C. § 1710, 24 C.F.R. Part 203.

33.    Since 1934, HUD and the FHA have insured over 34 million home mortgages and more than 47,000 multifamily project mortgages. Currently, the FHA insures 4.8 million single family mortgages and 13,000 multifamily projects, and now backs over 40 percent of new mortgages.

34.    During the relevant time period, the Defendant Banks originated, underwrote, and/or serviced mortgages guaranteed by HUD, through the FHA.

### 3.    The Federal National Mortgage Association

35.    The Federal National Mortgage Association, commonly referred to as "Fannie Mae," is a government-sponsored enterprise ("GSE") chartered by Congress with a mission to provide liquidity, stability, and affordability to the United States housing and mortgage markets. Fannie Mae is located at 3900 Wisconsin Avenue, N.W. in Washington, D.C.

36.    As part of its mission, Fannie Mae purchases single-family residential mortgages from mortgage companies and other financial institutions, including the Defendant Banks, providing revenue that allows the mortgage companies to fund additional loans. Fannie Mae then either holds the loans in its investment portfolios or bundles them into mortgage-backed securities ("MBS") they sell to investors.  Fannie Mae generally buys mortgages from the larger commercial banks, such as the Defendant Banks.

37.    Fannie Mae guarantees the loans that are bundled into the MBSs they sell to investors. If a borrower defaults on a mortgaged contained within a

particular MBS, Fannie Mae pays the investor (the ultimate owner of the mortgage debt) instead of the borrower.

38.    During the relevant time period, the Defendant Banks originated, underwrote, and/or serviced mortgages held and/or guaranteed by Fannie Mae.

### 4.    The Federal Home Loan Mortgage Corporation

39.    The Federal Home Loan Mortgage Corporation, commonly referred to as "Freddie Mac," is a government-sponsored enterprise chartered by Congress with a mission to provide liquidity, stability, and affordability to the United States housing and mortgage markets. Freddie Mac is located at 8200 Jones Branch Drive in McLean, Virginia.

40.    As part of its mission, Freddie Mac purchases single-family residential mortgages from mortgage companies and other financial institutions, including Defendant Banks, providing revenue that allows the mortgage companies to fund additional loans. Freddie Mac then either holds the loans in its investment portfolios or bundles them into mortgage-backed securities they sell to investors.  Freddie Mac generally buys mortgages from smaller banks, such as thrifts.

41.    As with Fannie Mae, Freddie Mac guarantees the loans that are bundled into the MBSs they sell to investors. If a borrower defaults on a mortgaged contained within a particular MBS, Freddie Mac pays the investor (the ultimate owner of the mortgage debt) instead of the borrower.

42.    In 2008, Fannie Mae and Freddie Mac owned or guaranteed about half of the U.S.'s $12 trillion mortgage market.

43.     During the relevant time period, the Defendant Banks originated, underwrote, and/or serviced mortgages owned and/or guaranteed by Freddie Mac.

## IV.     DEFENDANTS' FRAUDULENT ACTS

44.     In the early and mid-2000s, through various programs designed to facilitate homeownership, this country experienced an expansion of mortgage credit, including the issuance of subprime mortgages to families which previously did not qualify for mortgages.

45.     In 2007, the subprime mortgage crises socked the nationwide banking system, which coincided with, and greatly contributed to a recession in the U.S. and throughout the world.

46.     Beginning in 2007, and continuing for the next three years, home foreclosures skyrocketed, with foreclosure filings increasing from approximately 717,000 in 2006, to more than 1.28 million in 2007, 2.33 million in 2008, 2.82 million in 2009, and 2.87 million in 2010. Foreclosure filings began to taper off, but remained above pre-recession levels, at 1.89 million in 2011, 1.846 million in 2012, 1.36 million in 2013, and 1.12 million in 2014.

47.     Many of the mortgages that were placed into foreclosure were serviced by Defendants Bank of America Corporation, Bank of America, N.A., BAC Home Loans Servicing, L.P., f/k/a Countrywide Home Loans Servicing, L.P. Wells Fargo & Company, Wells Fargo Bank, N.A., J.P Morgan Chase & Company, JPMorgan Chase Bank, N.A., and Citigroup Inc., Citibank, N.A., and CitiMortgage, Inc., and insured or guaranteed by the Department of Veterans

Affairs, the Department of Housing and Urban Development, the Federal National Mortgage Association, and the Federal Home Loan Mortgage Corporation.

48. During the relevant time period, the Defendant Banks were the largest mortgage servicers in the United States:

(a) In approximately 2010, BOA serviced a portfolio of approximately 13,500,000 residential mortgage loans;

(b) In approximately 2010, Wells Fargo serviced a portfolio of approximately 8,900,000 residential mortgage loans;

(c) In approximately 2010, J.P. Morgan serviced a portfolio of approximately 6,300,000 residential mortgage loans;

(d) In approximately 2010, Citigroup serviced a portfolio of approximately 4,000,000 residential mortgage loans.

49. The Defendant Banks, as mortgage servicers, had contracts with mortgage foreclosure firms in every state to process foreclosures. The legal work performed by the foreclosure firms is mortgage liquidation through foreclosure or deed in lieu of foreclosure, collectively referred to as "mortgage foreclosures."

50. The Defendant Banks' servicing agreements with the Government Entities allowed them to pass on the costs of foreclosures to the Government Entities.

51. The contracts between the Defendant Banks and the foreclosure firms uniformly contain substantive mileposts for the accomplishment of specified tasks, e.g., the filing of a complaint. Each foreclosure file typically

contains four to six mileposts, and according to the contracts, the firms were required to submit bills within a specified time frame, typically within 48 hours after the completion of a milepost.

52.    Before the subprime mortgage crises hit, the workload was manageable for the foreclosure firms, and they were generally able to meet their mileposts and timely submit bills.

53.    Before the subprime mortgage crises hit, it generally took only twelve months to complete a judicial foreclosure. During 2009 through 2013, however, due to the substantial increase in the number of foreclosures, it was taking approximately twenty four months to complete a foreclosure.

54.    When the subprime mortgage crises hit, and foreclosure actions skyrocketed, the foreclosure firms were unable to consistently meet their mileposts on time. Even though foreclosure services had been rendered, the Defendant Banks refused and failed to pay for services which did not meet the mileposts.

55.    Banks, including the Defendants, were hard hit by the subprime mortgage crises and the recession. Each of the Defendant Banks engaged in a common practice for recouping some of their losses. They failed to pay mortgage foreclosure firms when mileposts were not timely met, yet billed the Government Entities as if these costs had been paid.

56.    Through this tactic, the Defendant Banks billed the Government Entities hundreds-of-millions of dollars for foreclosure services which they never paid for.

57. Defendant Banks have submitted claims to the VA for services performed by the foreclosure firms which the Defendant Banks have refused and failed to pay. For example:

58. During the relevant time period, a mortgage foreclosure firm billed J.P. Morgan $1,100 in attorneys' fees, and $2,581.00 in costs in connection with foreclosure work performed on VA Loan No. 282860699721. JPMCB, in turn, billed the VA, and the VA paid J.P. Morgan $990 in attorneys' fees and $1416.00 in costs, for a total of $2,406.00 in connection with the foreclosure of the loan. J.P. Morgan, however, refused and failed to pay any of the mortgage foreclosure firm's bill for these.

59. During the relevant time period, BOA was billed $600 in sales commission cost, and $575 in publishing costs by a mortgage foreclosure firm in connection with VA Loan No. 282860761106. BOA billed the VA, and the VA paid BANA $600 for the sales commission cost, and $500 for the publication of sale in connection with the foreclosure. BOA, however, refused and failed to pay any of the mortgage foreclosure firm's bill for these costs.

60. During the relevant time period, Wells Fargo was billed $650 in attorneys' fees and $150 in costs by a mortgage foreclosure firm in connection with the foreclosure of VA Loan No. 740629. Wells Fargo billed the VA, and the VA paid Wells Fargo $650 in attorneys' fees and $150 in costs. Wells Fargo, however, never paid the mortgage foreclosure firm's bill for these costs.

61. During the relevant time period, Citigroup was billed $150 for an initial title report, and $50 for a post complaint title report by a mortgage

foreclosure firm in connection with the foreclosure of FHA loan No. 2004940717. Citigroup billed the FHA, and the FHA paid Citigroup $125 and $50 for these costs. Citigroup, however, never paid the mortgage foreclosure firm's bill for these costs.

62.    On information and belief, it is believed that Defendant Banks have similarly submitted claims to the FHA, Fannie Mae and Freddie Mac, for services for which they refused and failed to pay the mortgage foreclosure firms.

63.    It is estimated that, during the relevant time period, the Defendant Banks refused and failed to pay approximately $240 million worth of bills from foreclosure firms in connection with mileposts which were not billed within the time parameters specified in the contracts, but nevertheless the Defendant Banks billed the government entities for these services.

### V.    CAUSE OF ACTION

**VIOLATIONS OF THE FALSE CLAIMS ACT**
**31 U.S.C. § 3729(a)(1)(A) and (a)(1)(B) (2009)**

64.    Relator Morgan realleges the preceding paragraphs as if set forth herein.

65.    By virtue of the acts described above, the Defendant Banks knowingly presented, or caused to be presented to an officer or employee of the United States Government false or fraudulent claims for payment or approval.

66.    In so doing, the Defendant Banks acted knowingly; that is, they possessed actual knowledge that the claims for payment were false or fraudulent; acted in deliberate ignorance of the truth or falsity of the claims for payment; or acted in reckless disregard of the truth or falsity of the claims for payment.

67.    By virtue of the acts described above, the Defendant Banks made, used, or caused to be made or used, a false record or statement material to a false or fraudulent claim.

68.    In so doing, the Defendant Banks acted knowingly; that is, they possessed actual knowledge that the information, statements and representations were false or fraudulent; acted in deliberate ignorance of the truth or falsity of the information, statements and representations; or acted in reckless disregard of the truth or falsity of the information, statements and representations.

69.    The United States of America, through the VA, FHA, Fannie Mae and Freddie Mac, unaware of the falsity of the claims and/or information, statements and representations made or caused to be made by the Defendant Banks, and in reliance on the accuracy of these claims and/or statements, paid and may continue to pay the false claims submitted by the Defendant Banks.

70.    As a direct and proximate result of the illegal acts by the Defendant Banks, the United States of America has been damaged in amounts to be determined at trial.

## VI.    **REQUEST FOR RELIEF**

WHEREFORE, Relator, on behalf of himself and the United States Government, respectfully requests that the Court enter an Order:

A.    This Court enter judgment against each Defendant in the amount of three times the damages the United States Government has

sustained, in an amount to be proven at trial, pursuant to 31 U.S.C. § 3729(a)(1)(A);

B.    This Court enter judgment against each of the Defendant Banks for civil penalties of not less than five thousand five hundred dollars ($5,500) or more than eleven thousand dollars ($11,000) for each and every specific false or fraudulent claim or certification, false statement, or material omission made by Defendant Banks, as may be identified at trial after full discovery, as provided for in 31 U.S.C. § 3729(a)(1)(A);

C.    The Relator be awarded the maximum amount allowed pursuant to § 3730(d) of the False Claims Act;

D.    The Relator be awarded all reasonable attorneys' fees, costs, and expenses;

E.    The Court award pre-judgment and post-judgment interest;

F.    The United States and the Relator receive all other relief, both at law and in equity, to which they are entitled.

## VII.  **JURY DEMAND**

Relator, on behalf of himself and the United States Government, demands

a jury trial on all issues so triable

Dated:  March 18, 2016

Respectfully submitted,

TIMOTHY B. MORGAN

By: _____
One of the Attorneys for Relator
and Plaintiffs

Bruce C. Howard
*bhoward@siprut.com*
Richard S. Wilson
*rwilson@siprut.com*
SIPRUT PC
17 N. State Street
Suite 1600
Chicago, Illinois 60602
312.236.0000
Fax: 312.878.1342